IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 19-cr-245-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. CHRISTOPHER LYMAN,

    Defendant.

## PLEA AGREEMENT

The United States of America, by and through Andrea Surratt, Assistant United States Attorney, and the defendant, Christopher Lyman, personally and through counsel, Ryan Coward, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing.

### I. PLEA AGREEMENT

This plea is pursuant to Fed. R. Crim. P. 11(c)(1)(A).

**A.   Defendant's Obligations**

    **1.**    **Count(s) of Conviction**

The defendant agrees to plead guilty to Count One of the Information, which charges a violation of Title 18, United States Code, Sections 1960(a) and (b)(1)(B).

The defendant also agrees to forfeit the seized assets as described below.

    **2.**    **Waiver of Appeal:** The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Understanding this and in

Court Exhibit

1

exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following three criteria: (1) the sentence imposed exceeds the maximum penalty provided in the statute of conviction, (2) the sentence exceeds the advisory Guidelines range for a total offense level of 15, or (3) the Government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives his right to challenge this prosecution, conviction, or sentence and/or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255. This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing Guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

3.     **Forfeiture of Assets**

The defendant agrees to the forfeiture allegation and to forfeit to the United States immediately and voluntarily the following items pursuant to Title 18, United States Code, Section 982(a)(1) whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees, or elsewhere. The assets to be forfeited specifically include, but are not limited to:

- U.S. currency in the amount of $7,700 seized on May 17, 2019, and
- 6.76 bitcoin seized on May 17, 2019.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis to establish that the requisite nexus exists between the specific property subject to forfeiture and the offense to which defendant is pleading guilty. Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the Court find that the government has established the requisite nexus and enter a preliminary order of forfeiture.

In addition to forfeiture, the defendant further agrees to relinquish all claim, title and interest defendant has in the property named in this section seized from the defendant to the United States.

## B.    Government's Obligations

The Government agrees that, at the time of sentencing, it will move to dismiss underlying Indictment 19-cr-245-WJM.

In exchange for the defendant's timely plea of guilty, the Government also agrees to recommend the Court give the defendant full credit for acceptance of responsibility, unless the defendant engages in conduct that qualifies for the obstruction of justice enhancement under U.S.S.G. §§ 3C1.1 and 3E1.1, comment (note 4) between the time of the guilty plea and sentencing.

## II. STATUTORY PENALTIES

The statutory penalty for the offense charged in Count One of the Indictment is not more than 5 years' imprisonment; not more than a $250,000 fine; not more than 1 year supervised release; and a $100 special assessment fee.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## III. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. If the defendant is an alien, the conviction may cause the defendant to be deported and removed from the United States or confined indefinitely if there is no country to which the defendant may be deported, to be denied admission to the United States in the future, and to be denied citizenship.

## IV. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which the defendant will plead guilty are as follows:

- The defendant knowingly conducted, controlled, managed, supervised, directed, or owned, all or part of an unlicensed money transmitting business.
- An "unlicensed money transmitting business" is one that affects interstate or foreign commerce and is operated without appropriate state or federal licenses.

- "Money transmitting" means transferring funds on behalf of the public by any and all means, including by wire, check, draft, facsimile, or courier.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory Guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which do not contradict the facts to which the parties have stipulated and which are relevant to the Guideline computation under § 1B1.3, or to the sentencing factors found in § 1B1.4 and 18 U.S.C. § 3553(a), or to this Court's overall sentencing decision. In "determining the factual basis for the sentence, the Court will consider the stipulation of the parties, together with the results of the presentence investigation, and any other relevant information." U.S.S.G. § 6B1.4 Comm.

The parties stipulate to the following facts:

Over the course of five lengthy, recorded in-person meetings, each of which occurred in the District of Colorado, Christopher Lyman engaged in transactions with a DEA undercover officer (the "UC") in which Lyman gave the UC bitcoin (and in one

5

case, checks) in exchange for cash, which the UC represented to be proceeds of an illegal marijuana operation.

On November 27, 2018, the UC purchased $1,000 worth of bitcoin from Lyman. During this meeting, the UC explained to Lyman that the UC has proceeds from an unlawful marijuana business that he wants to exchange for bitcoin to take advantage of bitcoin's anonymity. During this meeting, Lyman discussed with the UC about how to successfully launder the UC's money.

On December 10, 2018, the UC purchased $5,000 worth of bitcoin from Lyman. During this meeting, the UC and Lyman discussed other ways in which the UC could legitimize his drug money. Lyman suggested a method by which Lyman could write checks to the UC in exchange for cash, which would make it appear as though the UC was simply taking in legitimate business proceeds.

On January 10, 2019, the UC gave Lyman $15,000 cash, and Lyman wrote two checks to the UC for $6,255 and $7,545 ($15,000 less Lyman's commission). The checks were designed to look like business income in order to legitimize the UC's marijuana profits.

On February 12, 2019, the UC gave Lyman $66,000 cash in exchange for bitcoin.

A final meeting occurred on May 17, 2019. Prior to this meeting, Lyman discussed exchanging $120,000 bitcoin for the UC's cash. Ultimately, however, Lyman gave the UC approximately $47,000 worth of bitcoin (6.76 bitcoin) and a co-conspirator—at the meeting at Lyman's behest—contributed approximately $63,000 worth of bitcoin. Lyman was arrested at the conclusion of this meeting.

Lyman had $7,700 in currency found in his backpack at the time of arrest on May 17, 2019.

The bitcoin transactions described above were each conducted using the internet. From at least in or about November 2018 through in or about May 2019, Lyman advertised bitcoin-for-cash services to the public online, and in fact engaged in money transmitting services on behalf of the public by wire, check, and other means. Accordingly, Lyman agrees that he was the owner, controller, and manager of an unlicensed money transmitting business that affected interstate or foreign commerce, and that he did not have a license to do so. Specifically, Lyman failed to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section as described in 18 U.S.C. § 1960(b)(1)(B).

## VI. ADVISORY GUIDELINE COMPUTATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the Government has an independent

obligation to assist the Court in making an accurate determination of the correct Guideline range. To that end, the Government may make legal or factual arguments that affect the estimate below.

Offense Level:

A. The Guideline applicable to Count One is U.S.S.G. § 2S1.3.

B. Pursuant to U.S.S.G. § 2S1.3(a)(2), the base offense level is 6, plus 10 levels pursuant to § 2B1.1, for a base offense level of 16.

C. Pursuant to U.S.S.G. § 2S1.3(b)(1), two levels are added.

D. Pursuant to U.S.S.G. §§ 3E1.1(a) and (b), 3 levels are subtracted because the defendant clearly and timely demonstrated acceptance of responsibility for the offense.

E. The defendant's total offense level is therefore 15.

Criminal History:

F. The parties acknowledge and agree that the estimation regarding the defendant's criminal history is tentative. The defendant acknowledges that the criminal history will be further investigated by the United States Probation Department and ultimately determined by the Court. The defendant further acknowledges that any additional facts regarding the criminal history can greatly affect the final Guideline range and result in a longer term of imprisonment. Based upon the facts known at this time regarding the defendant's criminal history, the parties believe that the defendant falls within Criminal History Category ("CHC") I. § 4A1.1.

Guidelines Range:

G. The Guidelines range resulting from the estimated offense level of 15 and the estimated Criminal History Category of I is 18-24 months' imprisonment. The imprisonment range at offense level 15 could be from 18 (at the bottom of CHC I) to 51 (at the top of CHC VI).

H. Pursuant to U.S.S.G. § 5E1.2, given an offense level of 15, the fine range for the offense of conviction would be $7,500 to $75,000, plus applicable interest and penalties.

The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the Guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the Guideline range precludes either party from asking the Court, within the overall context of the Guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory Guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VIII. ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements, side agreements, terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: March 2, 2020

Christopher Lyman
Defendant

Date: March 2, 2020

Ryan Coward
Attorney for Defendant

Date: 06/09/2020

Andrea Surratt
Assistant U.S. Attorney