**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Case No. 19-cr-00245-WJM

UNITED STATES OF AMERICA,

v.

CHRISTOPHER LYMAN

---

**DEFENDANT'S OBJECTIONS AND CORRECTIONS TO THE PSIR**

---

      Defendant, Christopher Lyman, by and through his undersigned counsel, Aviso Law LLC, hereby provides the court with his objections and corrections to the presentence report filed with the court on October 14, 2020 (Doc. # 39).  In support thereof, Mr. Lyman states as follows:

**OBJECTIONS AND ARGUMENT**

   **1.  Paragraph 1**.  The PSIR reports that Mr. Lyman was originally charged in Count 2 with a violation of 18 U.S.C. § 1960(a) and (b)(1)(B).  This is incorrect and should be changed to reflect that Mr. Lyman was initially charged in Count 2 with a violation of 18 U.S.C. § 1960(a), (b)(1)(B) and (b)(1)(C).  *See* Doc. #1.

   **2.  Paragraph 14**.  The final sentence in Paragraph 14, which was also contained in the Stipulated Facts section of the Plea Agreement says that Mr. Lyman was arrested at the conclusion of the May 17, 2019 meeting with an undercover DEA agent.  While this is technically true, it is worth including additional information within the PSIR to reflect that Mr. Lyman may have been arrested on May 17, 2019 after a meeting with an

undercover DEA agent, but that he was later released without any charges.  Mr. Lyman

was later formally indicted and notified of the indictment on June 18, 2019.  After being

notified, he voluntarily surrendered himself on June 18, 2019 and appeared in court for

the first time in this case on the same date.  *See* Doc. # 4, 6.

3.  **Paragraph 18**.  The Defendant agrees that he did make representations to the

undercover agent that he had existing customers in the marijuana business who come

to him to exchange bitcoin.  However, this representation by the Defendant to the

undercover agent was a fabrication to gain the individual's trust and to make himself

look "experienced."  At no point in the investigation was this claim substantiated and Mr.

Lyman, in fact, had not exchanged any Bitcoin for cash with any other individual (other

than the DEA) that he believed to be involved in illegal drug activity.

4.  **Paragraph 22**.  This paragraph references events that are not accurately

portrayed in the PSIR.  For the purposes of accurately documenting what happened

during these events, the paragraph should read as follows:

> Mr. Lyman was robbed during a Bitcoin-for-cash transaction that did not involve
> drugs and that he perceived to be lawful.  When he arrived to complete the
> transaction, the person he was supposed to meet robbed him.  Mr. Lyman was
> under the belief that this individual had a firearm, and he had this belief because the
> individual put something into Mr. Lyman's back that he believed to be a firearm.  Mr.
> Lyman, who at the time was carrying his own firearm for personal protection, and
> was licensed to do so with a concealed carry permit, showed the individual his
> firearm because he believed he needed to do so under the circumstances for his
> own personal safety.  The individual who was robbing Mr. Lyman nonetheless took
> $3,000 of cash that Mr. Lyman was carrying.  Mr. Lyman did not use the firearm or
> discharge the firearm to prevent the robbery, and instead, rightfully believed that it
> was better to let the individual steal the $3,000 instead of discharging or using the
> firearm in any manner whatsoever.  Mr. Lyman later reported the incident to local
> law enforcement.

5.  **Paragraph 24**.  Similar to the fabricated bolstering contained in Paragraph 18 of the PSIR, discussed above, Mr. Lyman was also lying when he told the undercover agent that he had attended a FinCEN security conference.  In fact, Mr. Lyman never attended any such conference.  My Lyman learned of FinCEN after being concerned that he could have Bitcoin stolen from him in one of the exchanges that he was doing where he was either buying or selling Bitcoin for cash and trying to make money from these activities based upon the Bitcoin exchange rate.  Concerned that he could be scammed by a person he was dealing with, he discovered a FinCEN YouTube video which discussed the Government's ability to track Bitcoin transactions in the event of fraud or theft.  Mr. Lyman then portrayed himself as experienced by untruthfully claiming that he had attended a FinCEN security conference.  Mr. Lyman never attended such a conference and there is no evidence contained in the investigation to support a conclusion that he actually did so.

6.  **Paragraph 29**.  This paragraph states that Mr. Lyman used a "lookout" named "Jung" during a meeting with an undercover agent at the Sheraton Denver West Hotel. While Mr. Lyman does not deny that he might have been meeting with an acquaintance prior to meeting with the undercover agent, he did not use a lookout during the meeting. As explained in Paragraph 80 of the PSIR, Mr. Lyman was employed in a career where he provided audio and visual equipment to hotels for large conferences.  While Mr. Lyman doesn't recall the specifics of who he was speaking with prior to the meeting with the undercover agent, it is very likely that he was simply meeting with an acquaintance who worked at the hotel and who he knew through his employment at J & S Audio

Visual.  Whoever the individual might have been, he was not a "lookout" as claimed in Paragraph 29.

7.  **Paragraph 31**.  This paragraph inaccurately portrays the extent of Mr. Lyman's profits from his Bitcoin exchange business.  The paragraph says that Mr. Lyman claimed to have made $20,000 from commissions in the month preceding his arrest.  To accurately reflect the extent of MR. Lyman's activities, this paragraph should read:

> During an interview with SA's following the defendant's arrest, he indicated that he engaged in $20,000 in bitcoin-for-cash exchanges over the past month.

Mr. Lyman did not earn $20,000 in commissions and there is no evidence in the investigation to support such a conclusion.  Instead, Mr. Lyman engaged in $20,000 of bitcoin-for-cash exchanges that he believed to be lawful, and in doing so, made a roughly $1,500 profit from these exchanges through his commissions.  During these transactions, Mr. Lyman was not exchanging Bitcoin for cash with individuals that he believed to be involved in illegal drug activity, and there is no evidence in the investigation to support such a conclusion.

8.  **Paragraph 82**.  This paragraph should be corrected to reflect that Mr. Lyman is currently employed as an Uber driver and that he has been engaged in this employment for several months.  As documented in the attached Uber records, Mr. Lyman makes an average of $900 per week, or $3,600 per month.  *See* Uber earnings records, attached hereto as **Exhibit A**.  These records do not reflect Mr. Lyman's net earnings since they do not account for the cost of gasoline or vehicle upkeep and they are also pre-tax numbers.  Nonetheless, Mr. Lyman is fully employed as an Uber driver and expects to continue in this role until the COVID-19 pandemic is resolved and he can return to his

primary career providing audio visual services to hotels.

WHEREFORE, Mr. Lyman respectfully requests that the presentence report be modified to reflect the objections and corrections noted above.

Respectfully submitted this 28th day of October 2020.

**AVISO LAW LLC**

*/s/Ryan S. Coward*
Ryan S. Coward, #38906
618 N. Tejon St.
Colorado Springs, CO 80903
Telephone: (719) 247-3111
Fax: (719) 297-3814
E-Mail:  ryan@avisolawllc.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 28th day of October, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will serve the pleading upon the parties and the court.

_/s/Ryan Coward_____
Ryan Coward